09-CV-01032-CMP

_____ FILED          _____ ENTERED
_____ LODGED       _____ RECEIVED

JUL 21 2009      IS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| VETERANS FOR PEACE GREATER SEATTLE, CHAPTER 92, a 501(c)3 non-profit organization; BRUCE AND DONNA BEAVERS, married individuals; GREGORY LEWIS, an individual; JAMES GREER, an individual; RICHARD GILBERT, and individual; GUS LEE, an individual; AND JOHN AND JANE DOES I-CC, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SEATTLE WASHINGTON, a Washington municipal corporation; GREG NICKELS,  MAYOR OF SEATTLE, in his official capacity; WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; PAULA J. HAMMOND, SECRETARY OF WSDOT in her official capacity <br><br> Defendants. | No. **C09  1032** RSM <br><br> COMPLAINT <br><br> [JURY DEMANDED] |

Plaintiffs, by and through undersigned counsel, present the following Complaint:

## I. Introduction

**1.1. It is not against the law to be poor or homeless in America.**  Yet, there are times and instances where the draconian implementation of certain laws and regulations all but make it

COMPLAINT - "NICKELSVILLE" - 1

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

*(handwritten left margin: No Iss/IFP App.)*

1    so. The instant case is one such instance about which this Court has an opportunity to take

2    action to prevent a travesty of justice.

3        It has been well established that on an average night in Seattle, Washington, there are far

4    more homeless individuals than there are available beds in Seattle's homeless shelters [1] [2] The

5    duplicated turn-away rate of DV victims for Seattle and King County in 2007 averaged 18 to 1.[3]

6    As a result, many homeless individuals must regularly sleep in public spaces. This behavior,

7    though necessary and unavoidable, is generally unlawful and disagreeable to the City of Seattle

8    (the "City") and the Washington Department of Transportation (alternatively the "WSDOT", and

9    the "State") that own and manage much of the public land to which homeless individuals

10   commonly resort for living and sleeping space. Thus, from time-to-time, when the City or the

11   WSDOT discover that homeless individuals are using a particular area of public land as a living

12   or sleeping area, the City or WSDOT will order and conduct a "sweep" of that area, often

13   rousting the homeless persons from their makeshift beds, expelling them from the areas, and

14   removing and discarding their personal property. Such sweeps are commonly conducted with

15   _____

16   [1] The Seattle-King County Coalition for the Homeless estimates that 8,300 people are experiencing homelessness on
     any given night in Seattle and King County. Each year, the Seattle King County Coalition for the Homeless sponsors
17   a One Night Count that includes a count of people found on the streets and people staying in shelter and transitional
     housing programs. http://www.kingcounty.gov/healthServices/health/HCHN/homelessness.aspx

18   [2] On Friday, January 30, [2009,] 869 volunteers counted 2,826 people living on the streets of King County. This
     number is slightly higher than the total number of people counted in the same areas last year, although not statisti-
     cally significant. The homeless were of every age, race and gender. Some were huddled in doorways, some were
19   sleeping in cars, camped in parking lots, or sheltered in makeshift lean-tos in a city park. What they had in common
     is that they were all struggling to survive in the dead of winter, and they were all counted, by volunteers organized
20   into 125 teams by the Seattle/King County Coalition on Homelessness.
     http://www.homelessinfo.org/pr/2009_SKCCH_2009_ONC_Release.pdf

21   [3] Despite increases in capacity for emergency shelter and transitional housing programs for domestic violence vic-
     tims, the turn-away rate for Seattle and King County averages 18 to 1. In 2007, a total of 981 individuals were
     served through domestic violence shelter / transitional housing / motel voucher programs in Seattle and King Coun-
22   ty. Fully 25% of those in the emergency system were young children aged 0-5 years. Another 1,165 adults (who
     may or may not have entered shelter) received counseling through Domestic Violence Community Advocacy pro-
23   grams throughout King County. Even though emergency shelter and transitional housing capacity has increased for
     victims of domestic violence in recent years, shelter turn-away rates continue to rise. The duplicated turn-away rate
     for Seattle and King County averages 18 to 1. http://www.seattle.gov/humanservices/community_development/con-
24   plan/plan/default.htm

COMPLAINT - "NICKELSVILLE" - 2

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1   little or no regard for the human rights and dignity of the affected homeless individuals, who are

2   harassed and humiliated, and whose property is confiscated, destroyed, or discarded.  These

3   sweeps only deepen the plight of the homeless, whose daily struggle to secure food, clean water,

4   medical care, and shelter from the elements already thwarts much of their efforts to secure

5   employment, stable housing, or other significant attempts to move upward and out of

6   homelessness and poverty.  It is not unlawful to be poor or homeless in America.

8       **1.2.    By this action Plaintiffs, homeless individuals who live in Seattle,**

9   **Washington, seek on behalf of themselves and all others so situated, relief against the**

10  **Defendants' draconian enforcement of certain laws and regulations, which enforcement**

11  **should be held to be unlawful and unconstitutional.**  Plaintiffs, for lack of any viable

12  alternative, spend their days on the public streets, parks, and other public areas in the City and

13  frequently sleep outdoors at night.  All have been adversely affected by past City and WSDOT

14  sweeps: their privacy has been invaded, their possessions have been taken or destroyed, and they

15  have been humiliated and psychologically injured by aggressive and callous law enforcement

16  practices.  Still homeless, all Plaintiffs are now at risk of similar injuries through future sweeps,

17  including a planned sweep of their established homeless encampment since June 6, 2009 at 7100

18  West Marginal Way SWin Seattle, WA (AKANickelsville) scheduled to take place on <u>Tuesday,</u>

19  <u>July 21st, 2009</u>

20      **1.3. The nature of the relief Plaintiffs seek is an injunction prohibiting the**

21  **Defendants from sweeping or otherwise interfering with homeless encampments and their**

22  **occupants** unless the Defendants have first made proper and adequate arrangements for

23  notifying and housing the persons to be affected by a sweep, for properly storing and enabling

24

COMPLAINT - "NICKELSVILLE" - 3

**i.Justice Law, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

1   retrieval of property seized or removed during a sweep, and establishing procedures for

2   supervising and monitoring the performance of the officials conducting sweeps.  Plaintiffs also

3   seek compensation for the losses and injuries they have incurred to date, and any additional

4   injuries incurred during the course of this action.

5                                              **II. Parties**

6          2.1. Veterans For Peace Of Greater Seattle, Chapter 92, ("VFP") is a chapter of a national

7   organization with chapters in cities across America, which is a 501(c)3 non-profit corporation.

8   VFP works on behalf of veterans on issues of social and political importance to veterans.  VFP is

9   a sponsor of Nickelsville, and has members who are and have been residents of Nickelsville.

10         2.2 Individual Plaintiffs, are residents of Seattle, Washington, situated in this District.

11         2.3. Defendant City of Seattle ("the City") is a municipal corporation.

12         2.4. Defendant Greg Nickels is the mayor and chief executive officer for the City;

13  Defendant Nickels is responsible for implementing and carrying out the City's programs and

14  policies and is joined to this action in his official capacity only.

15         2.5. Defendant Washington State Department of Transportation (WSDOT) is an agency

16  and instrumentality of the State of Washington.

17         2.6. Defendant Paula J. Hammond is the Secretary and chief executive officer ofr

18  WSDOT.   Defendant Hammond is responsible for implementing and carrying out WSDOT's

19  programs and policies and is joined to this action in her official capacity only.

20

21

22

23

24
COMPLAINT - "NICKELSVILLE" - 4                                          **i.Justice Law, PC**
                                                                       PO Box 25817
                                                                       Seattle, WA 98165-1317
                                                                       Phone/Fax: 888-839-3299

1

**III. Jurisdiction & Venue**

2      3.1. This Court has personal jurisdiction over Defendants City of Seattle and Greg

3   Nickels, both of which are located in Seattle, King County, Washington, and which carry on

4   continuous and systematic business in this District.

5      3.2 This Court has personal jurisdiction over Defendants WSDOT and Paula Hammond,

6   both of which are located in Olympia, Thurston County, Washington, and which carry on

7   continuous and systematic business in this District.

8      3.3. Venue is appropriate in this District because all parties are present in this District, the

9   substantial events giving rise to this cause of action took place in this District, and because the

10  action concerns matters pertinent to residents of this District only.  28 USC 1391(b).

11     3.4. This Court has subject matter jurisdiction over this action, for Plaintiff's claims arise

12  under the Constitution and laws of the United States.  28 USC 1331.

13     3.5. Plaintiff also asserts certain claims arising under state and local law, over which this

14  Court has and should exercise supplemental jurisdiction.  28 USC 1367

15

16

**IV. Facts**

17     4.1. Individual Plaintiffs are homeless citizens residing in Seattle, Washington; none of

18  whom has, owns, rents, or has access to a dwelling or other permanent shelter (a "home"), and

19  are therefore homeless at present.

20     4.2. Lacking permanent shelter, Plaintiffs spend the preponderance of their time in public

21  places, including the streets, sidewalks, parks, greenbelts, public buildings, and other places

22  throughout Seattle, including under bridges, and in right-of-ways owned and controlled by the

23

24

COMPLAINT - "NICKELSVILLE" - 5

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    WSDOT. Of necessity, Plaintiffs engage in various necessary activities of daily living in these

2    public areas, including eating, washing, grooming, and sleeping.

3         4.3. Although sleeping facilities and other shelters are available to homeless persons in

4    Seattle, Plaintiffs are frequently unable to avail themselves of these shelters because:

5              a. The number of homeless people seeking beds or shelter spaces in Seattle has, at

6              all relevant times, so far exceeded the number of available beds and shelter spaces that

7              some persons, including Plaintiffs, are frequently denied admission to beds and shelter

8              facilities; and

9              b. The rules, requirements, and other conditions of access and use render some or

10             all of the available shelter facilities unsuitable for or inaccessible to Plaintiffs.

11        4.4. From time-to-time, members of Seattle's homeless population have established small

12   encampments in public areas having characteristics more favorable (than other areas) for the

13   needs and circumstances of homeless persons, such as:

14             a. Encampments take place in isolated areas where homeless persons can enjoy

15             some measure of privacy and security;

16             b. Encampments are placed away from busy public areas where the presence of

17             homeless encampments could interfere with other uses and activities; and

18             c. Some encampments offer favorable natural and artificial features for persons

19             seeking shelter from the elements, such as trees, rocks, walls, lighting, etc.

20        4.5. Homeless persons who participate in such encampments sometimes pitch tents,

21   assemble lean-tos, or find and use pieces of cardboard, a tarpaulin, wood, or other materials to

22   enhance the pre-existing natural and artificial shelter-providing features of the encampment sites.

23

24

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1  4.6. Plaintiffs have participated in such encampments in the past, and intend to continue

2  doing so in the future.

3  4.7. Although homeless, Plaintiffs tend to have personal property, such as:

4  a. Necessary personal effects, such as food, medications, soap, toothbrushes,

5  eyeglasses, tobacco, jewelry, clothing, bags, and money;

6  b. Important personal documents, such as identification materials, prescriptions,

7  licenses, notes, business cards, and books;

8  c. Items of sentimental value, such as photographs, jewelry, books, letters;

9  d. Necessary practical gear, such as sleeping bags, blankets, mats, tools, bicycles,

10  telephones, radios, clocks, and eating utensils; and

11  e. Other personal property of various kinds.

12  4.8. Such property may tend to have much greater value to Plaintiffs and potentially other

13  homeless persons than it may have to others, for instance:

14  a. Food and clean water is scarce and difficult for homeless people to obtain; thus,

15  food items and water that may appear undesirable or inedible to some, or even have been

16  previously discarded by others, may in fact supply life-sustaining nutrition and hydration

17  that a homeless person may otherwise go without;

18  b. Clothing, blankets, and other bedding—whether consisting of traditional

19  textiles or other products adapted for use as bedding—are essential for homeless persons

20  to keep warm and dry in cold, wet, and other adverse weather conditions;

21  c. Medications, vision products, hearing aids, and similar items may be essential

22  to meet the physical and mental health care needs of the plaintiffs; loss or other

23  deprivation of such critical items, even for very short periods of time, can threaten

24

COMPLAINT - "NICKELSVILLE" - 7

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    incapacitation, mental health crisis, or other deleterious health impacts, up to and

2    including death;

3          d. Personal papers and legal documents may be necessary for plaintiffs to obtain

4    essential services and benefits, such as health care, emergency cash or food assistance, or

5    temporary shelter; in addition, lacking such information may further frustrate plaintiffs'

6    efforts to obtain employment or pursue other avenues to stable housing;

7          e. Photographs, keepsakes, and other items of sentimental value have special

8    value to persons enduring the constant psychological trauma of homeless; and

9          f. The relatively few, typically meager possession a homeless person may own are

10   often of particular value simply because such possessions are literally the only things that

11   person owns.

12   4.9. Often it is not possible or practical for Plaintiffs to carry their personal property

13   within them when attending to their personal and business affairs, which, among other reasons,

14   include:

15         a. Applying for or collecting public benefits;

16         b. Searching for employment or attending jobs they hold;

17         c. Visiting doctors, psychiatrists, social workers, or other care providers; and

18         d. Obtaining food, clean water, or other necessities of survival.

19   4.10. Because they lack access to storage or practical means of transporting their personal

20   property, homeless persons, such as the plaintiffs, must often leave their possessions in public

21   areas when attending to such affairs; property Plaintiffs leave in public areas is not abandoned;

22   Plaintiffs leave the property out of necessity and expect to find their property again upon return.

23

24

COMPLAINT - "NICKELSVILLE" - 8

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    4.12. Sometimes, homeless individuals, such as Plaintiffs, obtain assistance from others

2    to keep watch over their property while attending to other matters; other times, however, such

3    assistance is not available and the property must be left unattended.

4    4.13. Many homeless individuals, including Plaintiffs, have found the homeless

5    encampments offer a comparatively prudent place to leave personal property while attending to

6    other affairs, because:

7        a. Being located generally in isolated areas away from large population clusters,

8        there is less risk of the property being damaged, moved, or otherwise taken or tampered

9        with by others while unattended;

10       b. In such areas, the property is less likely to interfere with other uses and

11       activities that might occur in the location of the property; and

12       c. The presence of other homeless persons at the encampment sites increases the

13       likelihood of finding another to watch over the property while the owner is away.

14   4.14. Some of the homeless encampments taking place in Seattle are conducted on

15   property owned by the City.

16   4.15. Some of the homeless encampments taking place in the Seattle area are conducted

17   on property owned by the WSDOT.

18   4.16. Neither the City nor WSDOT approves of or supports the existence of homeless

19   encampments on City or WSDOT land.

20   4.17. Both the City and WSDOT have, from time-to-time, ordered, conducted, or

21   otherwise caused "sweeps" of encampment sites to occur., including a sweep conducted by the

22   City of an earlier Nickelsville encampment at a site adjacent to the current WSDOT site, which

23   sweep occurred on September 26, 2008.

24

COMPLAINT - "NICKELSVILLE" - 9

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    4.18. All such sweeps have been carried out either by City or WSDOT personnel, or by

2    agents of the City and/or WSDOT acting at the direction and control of the City and/or WSDOT.

3    4.19. In a typical "sweep" of a homeless encampment, employees, contractors, or other

4    agents of the City or WSDOT enter the encampment site and:

5        a. Seize and remove personal property from the site, most of all of which belongs

6    to the homeless individuals situated there;

7        b. Damage or destroy some personal property at the site;

8        c. Disassemble or deconstruct tents, lean-tos, and other shelter devices; and

9        d. Disperse and expel homeless individuals from the area.

10   4.20.  Prior to April 7, 2008, neither the City nor WSDOT had adopted a written policy or

11   set of procedures for conducting sweeps; rather, sweeps tended to occur in an ad hoc fashion;

12   prior notice of the sweeps was seldom given, and when notice was given, it was not done in a

13   manner reasonably calculated to reach persons camping in the sites to be swept; the sweeps were

14   carried out by persons completely lacking in training, skills, and other appropriate preparations

15   for respecting the rights of homeless individuals; the sweeps were not authorized by a warrant or

16   other court order, nor was any administrative or judicial tribunal or other process by which

17   persons objecting to the sweeps or particular decisions or actions in connection with the sweeps,

18   might seek redress.

19   4.21. Not surprisingly, many homeless individuals, including these Plaintiffs, have

20   suffered injuries and rights violations in such sweeps, including the deprivation of personal

21   property without due process of law, humiliation, interference with the right to travel and freely

22   associate, invasions of privacy, unreasonable searches and seizures, other violations of their

23   rights.

24

COMPLAINT - "NICKELSVILLE" - 10

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1      4.22. After suffering such abuses in numerous City and WSDOT sweeps, area homeless

2  individuals and advocates for the homeless complained to the City and WSDOT about problems

3  occurring with the sweeps.

4      4.23. Prompted by such complaints, the City promulgated Multi-Departmental

5  Administrative Rules 08-01 ("MDAR 08-01"), the specific purposes of which included, among

6  other things, to:

7      "[e]stablish rules and procedures regarding entering or remaining in certain areas
of City property that are either not open to the public or are open to the public

8      only during certain operating hours . . . regarding the erection of structures or the
placement of equipment on certain City property . . . prohibiting camping on City

9      property [and] standard procedures regarding the removal from City property of
unlawful or unauthorized structures, camping equipment, and other personal

10     property left on City property."

11 See MDAR 08-01, § 1.4.

12     4.24. Since the MDAR 08-01 went into effect on April 7, 2008, the MDAR 08-01 rules

13 (in addition to other applicable law) have governed the conduct of homeless "sweeps" by City

14 agencies on City property.

15     4.25. Likewise, on December 1, 2008, the WSDOT enacted its administrative rules

16 governing sweeps at WSDOT General Special Provisions (GSP) 070402.FR1 - Health Hazards.

17     Members of Seattle's homeless population and their advocates hoped that the MDAR

18 08-01 and WSDOT GSP 070402.FR1 rules would stop or significantly reduce the incidence of

19 unconstitutional or other unlawful treatment of homeless individuals by City and State officials

20 (and their agents) in the execution of future sweeps.

21     4.26. However, in continuing to conduct homeless sweeps on City and State property

22 since April 7, 2008, City and State officials and agents have continued to violate the rights of

23

24 COMPLAINT - "NICKELSVILLE" - 11

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    homeless persons affected by such sweeps, including by consistently failing to comply with

2    critical provisions of their own rules.

3    4.27. Even if the sweeps were conducted fully in accordance with City and WSDOT

4    rules, certain aspects of the sweeps would still infringe upon some rights of the affected

5    homeless citizens because the rules are not reasonably calculated to assure that the sweeps do not

6    violate the constitutional and other legal rights of homeless Seattle residents.

7    4.28. Upon information and belief, neither the City nor WSDOT has ever conducted a

8    homeless sweep in a manner that did not result in the violation of significant constitutional or

9    other legal rights of the affected homeless individuals, and the policies and practices by which

10   the City and WSDOT continue to effectuate homeless sweeps are unlawful and, unless reformed,

11   virtually certain to cause ongoing violations of homeless persons' rights.

12

13                          **V. Grounds for Injunctive Relief**

14   5.1. Despite never having conducted a homeless sweep in a lawful and constitutional

15   manner, and despite having consistently failed to conduct homeless sweeps in accordance with

16   its own rules and policies, and despite having failed to correct the deficiencies in its past sweep

17   practices, the City and WSDOT have announced plans to carry out yet another homeless sweep

18   on or about Tuesday, July 21st, 2009 at the current location of the homeless encampment known

19   as "Nickelsville", located at 7100-7200 West Marginal Way SW.

20   5.2. If the planned sweep of Nickelsville is implemented, then it is virtually certain that,

21   among other things:

22           a. Personal property belonging to homeless individuals situated there will be

23           unlawfully searched, seized and/or removed from the site;

24

COMPLAINT - "NICKELSVILLE" - 12

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

b. Personal property belonging to homeless individuals situated there will be unlawfully damaged or destroyed;

c. Tents, lean-tos, and other shelter devices situated there will be unlawfully disassembled and deconstructed; and

d. Homeless individuals will be humiliated, subjected to unreasonable searches or seizures and invasions of their privacy, and be unjustly dispersed or expelled from the area unlawfully infringing their constitutional rights to assemble and to travel.

5.3. The types of losses and injuries from the anticipated sweep are not of a kind for which monetary damages could adequately compensate the victims.

5.4. Furthermore, some of the personal property that could be damaged, destroyed, or lost in the sweep includes items that are unique and irreplaceable, and items that, being necessary for physical or mental health and well-being, even temporary deprivation of could cause substantial and irreparable injury to the owners.

## VI. Causes of Action

### 7.1. Unreasonable Search & Seizure:

a. The City and WSDOT are public entities subject to the Fourth Amendment of the U.S. Constitution and Article I, Section 7 of the Washington State Constitution;

b. In conducting homeless sweeps, the Defendants have in the past and intend in the future to search, seize, and dispose of property found on, with, or near homeless individuals, or left temporarily unattended in public places by homeless individuals, but without any valid warrant or court order so authorizing;

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

c. Defendants' actions in searching, seizing, and disposing of such property without a valid warrant is unreasonable and contrary to the Fourth Amendment of the U.S. Constitution and is an unlawful disturbance and invasion of the Plaintiffs' homes contrary to Article I, Section 7 of the Washington State Constitution;

d. The Plaintiffs have been injured in the past, and anticipate being injured again in the future, unless the Defendants' unconstitutional policies, practices, and customs of unreasonably searching, seizing, and disposing of homeless individuals' property without valid warrants or other court orders so authorizing, are restrained.

**7.2 Violation Of The Constitutional Right To Travel.**

a. The City's and WSDOT's encampment sweeps, whereby the unsheltered homeless are deprived of their blankets, tents, and other gear, and force citizens to move from their current location, clearly infringe on the Plaintiffs' right to travel, for as the U.S. Supreme Court has long recognized, "laws penalize travel if they deny a 'necessity of life' to a person who chooses to enter or remain in a particular community."  See *Memorial Hospital* at 258-59, see also *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1580 (S.D.Fla. 1992).

**7.3. Deprivation of Property Without Due Process of Law:**

a. The City and WSDOT are public entities subject to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article I, Section 3 of the Washington State Constitution;

b. In conducting homeless sweeps, the Defendants have in the past and intend in the future to seize, hold, and dispose of property found on, with, or near homeless

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    individuals, or left temporarily unattended in public places by homeless individuals, but

2    without reasonable notice or a meaningful opportunity to contest the seizure, holding, or

3    disposal of such property;

4           c. Property seizures take place during the sweeps, but Defendants often fail to

5    give any notice at all of when a sweep will occur; when notice is given, the time, manner,

6    and content of the notice is insufficient to reasonably inform affected persons of the date,

7    time, and location of the sweep, or of any right for contesting property seizures expected

8    to occur during the sweep;

9           d. Not only have the defendants failed to give full and fair notice of the sweeps,

10   but some agencies and instrumentalities of the City and WSDOT have conducted sweeps

11   at times and in places intended and designed to catch homeless persons by surprise, or

12   during adverse weather conditions so as to exacerbate the detrimental impacts of the

13   sweep; on information and belief, the defendants have utilized such tactics to deter and

14   intimidate homeless persons from gathering in groups of a particular size or in specific

15   locations especially disfavored by the defendants;

16          e. Neither the City nor WSDOT affords any tribunal or other procedure by which

17   a person, during or before a sweep, may contest the seizure or removal of property;

18          f. Once property is seized and removed from the site of a homeless sweep, the

19   Defendants will, in their sole discretion, either store or discard the property; neither the

20   City nor WSDOT affords any tribunal or other procedure by which a person may contest

21   a decision to discard of property seized and removed during a sweep;

22          g. Particularly with respect to irreplaceable items (such as legal documents, ID,

23   sentimental items, etc.) or critical health & safety items (such as medications, eyeglasses,

24

COMPLAINT - "NICKELSVILLE" - 15

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1  etc.), the failure to afford a pre-deprivation opportunity to contest the seizure, removal, or

2  discarding of the property cannot be cured by any post-deprivation hearing or subsequent

3  compensation;

4      h. Persons who are present during homeless sweeps may sometimes protest the

5  seizure or removal of their property to the persons actually conducting the sweeps and

6  can sometimes persuade such individuals to refrain from seizing, removing, destroying,

7  or discarding property; however, the opportunity to raise such an objection does not

8  constitute a meaningful opportunity to be heard before an impartial decision-maker in an

9  orderly proceeding adapted to the capacities and circumstances of those to be heard;

10      i. Accordingly, the seizure, removal, and destruction of homeless individuals'

11  property during homeless sweeps entails the deprivation of property without due process

12  of law, in violation of the Fourteenth Amendment of the US Constitution and Article I,

13  Section 3 of the Washington State Constitution;

14      j. The Plaintiffs have been injured in the past, and anticipate being injured again

15  in the future, unless the Defendants' unconstitutional policies, practices, and customs of

16  seizing, removing, and destroying homeless individuals' property during sweeps without

17  due process of law, are restrained.

18  **7.4. <u>Unlawful Takings Without Just Compensation</u>:**

19      a. The City and WSDOT are public entities subject to the Takings Clauses of the

20  Fifth Amendment of the U.S. Constitution and Article I, Section 16 of the Washington

21  State Constitution;

22

23

24

COMPLAINT - "NICKELSVILLE" - 16

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

b. In conducting homeless sweeps, the Defendants have in the past and intend in the future to seize and take possession of property found on, with, or near homeless individuals, or left temporarily unattended in public places by homeless individuals;

c. Any property removed from the site of a City-conducted sweep, if not discarded, is held in a remote facility inaccessible to a substantial portion of the affected homeless persons; the difficulties of recovering property stored in that facility, if not absolutely insurmountable to homeless individuals, often make recovering such property too impractical or cost-prohibitive to attempt;

d. Such property seizures constitute takings, yet neither the City nor WSDOT affords just compensation for such takings;

e. The Plaintiffs have been injured in the past, and anticipate being injured again in the future, unless the Defendants' unconstitutional policies, practices, and customs of taking homeless individuals' property during sweeps without just compensation, are restrained.

7.5. **Failure to Afford Equal Protection of the Laws:**

a. Plaintiffs, who are homeless persons living on the streets and other public spaces in Seattle, are a discrete and insular minority who have been subjected to a history of purposeful unequal treatment comparatively worse than persons not lacking in shelter;

b. Due to their lack of access to shelter, as well as nutritious food, clean water, health and beauty products, laundry facilities, plumbing and utility services, and modern conveniences, the homeless are distinguished by obvious traits that cannot be readily changed, but which bear no relation their ability to perform or contribute to

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    society;

2    c. By reason of their homelessness, Plaintiffs' ability to command recognition

3    and representation in the majoritarian political process is substantially diminished, for

4    their lack of association with a particular street address or other fixed geographic

5    residence places them outside traditionally recognized voting constituencies;

6    d. As members of the homeless community, Plaintiffs have been, and

7    continue in the present to be, frequently held in contempt by non-homeless society, are

8    often subjected to harassment, ridicule, humiliation, and sometimes violence by reason

9    of their homeless condition, and are not-infrequently targeted or singled-out for

10   disparate treatment by police and other public officials disapproving of their presence;

11   e. Plaintiffs' ability to organize politically and advocate for their cause is

12   severely hampered, if not almost entirely disabled, by the constant need to attend to the

13   activities of daily survival, including the search for food, clothing, and respite from the

14   elements;

15   f. Accordingly, Plaintiffs' status as homeless persons merits extraordinary

16   protection from the unequal and discriminatory laws and policies which may unfairly

17   target them, but which plaintiffs lack the power to prevent by reason of their disabilities

18   and status as a discreet and insular minority;

19   g. Consistent with plaintiffs' status as such a suspect class, laws discriminating

20   against the plaintiffs on the basis of their homelessness are subject to strict scrutiny, and

21   unless narrowly tailored to serve a compelling governmental interest violate the equal

22   protection clauses of the Fourteenth Amendment of the U.S. Constitution and Article I,

23   Section 12 of the Washington State Constitution;

24

COMPLAINT - "NICKELSVILLE" - 18

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

h. The ostensible reasons for which the City "sweeps" homeless encampments, as stated in the MDAR 08-01, include: preventing interference with other uses, deterring and preventing crime, protecting the local environment, and avoiding public health hazards; see MDAR § 1.1; upon information and belief, WSDOT conducts its sweeps for similar or identical reasons;

i. However, conducting "sweeps" of homeless encampments, when insufficient shelter is available or accessible to the persons being swept, is not a policy or practice narrowly-tailored to advance the objectives of the sweeps because:

i. Such sweeps merely cause the affected homeless individuals to move from one public place to another, and thus any improvements in the environment at the sweep site is negated by a corresponding detriment to the environment in one or more other locations;

ii. Since the encampment sites are chosen in part for their isolated and comparatively innocuous locations, displacing homeless people from encampment sites tends naturally to exacerbate, rather than improve, the conditions for which the sweeps are supposedly undertaken; and

iii. Sweeping homeless encampments does not deter or prevent criminal activity or mitigate the effects thereof, to the contrary, if anything dispersing vulnerable homeless citizens, thereby forcing them to fend for themselves, is more likely to increase the likelihood that they will become targets and victims of criminal activity.

j. Even if Defendants were to ensure the availability of sufficient shelter for homeless individuals expected to be displaced, sweeping a homeless encampment is not a

COMPLAINT - "NICKELSVILLE" - 19

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1 policy or practice narrowly-tailored to advance the governmental objectives unless the

2 persons likely to be affected by the sweep are adequately informed of the shelter and are

3 provided the means of reaching and accessing such facilities, yet Defendants neither

4 provide sufficient shelter nor follows a policy or practice of engaging in proper outreach

5 prior to conducting sweeps;

6     k.  Defendants also conduct "sweeps" in ways that selectively enforce laws

7 against homeless persons;  for instance, restrictions forbidding the erection of tents or

8 pavilions or placement of tarps in City parks are seldom, if ever, enforced against non-

9 homeless park users but are zealously enforced against homeless people who use the

10 same parks;

11     l. Accordingly, Defendants' policies of sweeping homeless encampments

12 without assuring the availability of sufficient shelter for the persons affected by such

13 sweeps, as well as the flawed policies and practices by which the sweeps are conducted,

14 deny plaintiffs equal protection of the laws;

15     m. Plaintiffs have been injured in the past, and anticipate being injured again

16 in the future, unless Defendants' unconstitutional policies, practices, and customs of

17 targeting homeless encampments for "sweeps," are restrained.

18 **7.6. Failure to Reasonably Accommodate Homeless Persons with Disabilities:**

19     a. The City and WSDOT are public entities subject to Title II of the Americans

20 with Disabilities Act and recipients of federal funds subject to Section 504 of the

21 Rehabilitation Act, as well, as state and local anti-discrimination laws protecting persons

22 with disabilities;

23

24

COMPLAINT - "NICKELSVILLE" - 20

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    b. Many of the homeless individuals affected by the Defendants' sweeps are

2 persons who have, are perceived as having, or who have records of having mental or

3 physical impairments that substantially limit one or more major life activities, such as

4 working, reading, communicating, reading, traveling, or interacting with others;

5    c. The only method the City has implemented for notifying homeless people of

6 upcoming sweeps is by posting a written notice on the property to be swept; such

7 postings are typically inadequate to inform many homeless persons with disabilities of

8 the date, time, place, and other details concerning upcoming sweeps, because such

9 disabilities interfere with such peoples' ability to discover, read, and understand the

10 contents of such written postings;

11    d. Furthermore, many homeless persons are affected by disabilities that cause

12 such individuals to disbelieve, distrust, or otherwise persons lacking in the skills and

13 training needed for effective interaction with homeless, mentally ill, and other individuals

14 with unorthodox communication needs, yet the Defendants have failed to adequately

15 dispatch qualified personnel to deliver and explain information about sweeps to homeless

16 people with disabilities;

17    e. Even when homeless persons with disabilities have notice of an upcoming

18 sweep, their disabilities often prevent them from being able to move their possessions

19 elsewhere within the prescribed time period (typically, 72 hours or less), or at all;

20    f. When property belonging to homeless persons with disabilities is removed from

21 an encampment site, their disabilities often interfere with their ability to discover, travel

22 to, and retrieve their belongings from the place of storage.

23

24

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

g. When sweeps are taking place, homeless persons with disabilities have a more difficult time communicating with Defendants' personnel and raising objections to the seizure, removal, or destruction of important property;

h. Defendant WSDOT's policies and practices concerning the notice and execution of sweeps are as harsh, or worse, on homeless persons with disabilities as are the City's policies and practices.

i. Defendants could ameliorate the harsh effects of the homeless sweeps upon homeless persons with disabilities by: (i) conducting individualized outreach to homeless persons with disabilities, (ii) offering and arranging shelter, storage, and transportation for homeless persons with disabilities who accept such offers; (iii) engaging in an interactive process to discern appropriate and reasonable accommodations for homeless persons with disabilities who do not accept offers from shelter, storage, and transportation; and (iv) connecting homeless persons with disabilities to appropriate mental and physical health care providers and other service providers.

j. The Plaintiffs have been injured in the past, and anticipate being injured again in the future, unless the Defendants' failure to make reasonable accommodations in their rules, policies, practices, and services necessary to enable persons with disabilities equal access and enjoyment of the public services provided by the Defendants.

**7.7. Eighth Amendment Violation.**

a. Individual Plaintiffs herein are and have been homeless, which status dictates that they will necessarily engage in certain activities in public places, which are unavoidable consequences of their being homeless.

COMPLAINT - "NICKELSVILLE" - 22

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    b. Plaintiffs are involuntarily homeless because there is insufficient permanent, safe, and
2    secure shelter available to them while residing in the City of Seattle.

3    c. Among the life-supporting and necessary activities in which individual Plaintiffs must
4    engage in public places are: sleeping (including camping), eating, grooming, hygienic activities,
5    socializing (including assembling with others), all of which activities Plaintiffs have a right and
6    need to engage in.

7    d. Individual Plaintiffs either have been, or in the future will likely be fined, arrested,
8    imprisoned and/or prosecuted, as well as suffer the loss and deprivation of their private, personal
9    property by virtue of their homeless status, and for no unlawful act but engaging in necessary
10    activities in public places, if Defendants' sweep policies are enforced against them.

11    e. Defendants' sweep policies, and enforcement of the laws and regulations upon which
12    such policies are founded, have, and inevitably will have the effect of criminalizing
13    homelessness, as such policies and laws and regulations punish Plaintiffs and other homeless
14    individuals from engaging in life supporting, necessary activities, in violation of the US
15    Constitution, Eighth Amendment's ban on cruel and unusual punishment. *Jones v City Of Los*
16    *Angeles,* 444 F.3d 1118 (9th Cir.)

17

18    7.8    All Defendants act under color of state law; accordingly, violations of the federal
19    constitution are actionable under 42 USC 1983.

20    7.9. The Defendants' agents have in the past and continue in the present to violate various
21    legal and constitutional rights of homeless persons when sweeping homeless encampments
22    because the defendants have failed to properly train and supervise the agents conducting the
23    sweeps, and because no effective policy for conducting such supervision or monitoring the

24

COMPLAINT - "NICKELSVILLE" - 23

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1    performance of the agents exists, and because the Defendants have failed to take reasonable

2    corrective action upon learning of unlawful and unjust actions by their agents or have ratified or

3    approved of such unlawful conduct.

4          7.10. The Court has, and should exercise, supplemental jurisdiction over Plaintiff's state

5    law claims, which arise out of the same nucleus of operative facts but do not predominate over

6    their federal causes of action.  See 42 USC 1367.

7

8                                   **VIII. Relief Requested**

9          8.1. Plaintiffs request an injunction prohibiting Defendants from conducting any sweep of

10   any homeless encampment unless:

11              a. Defendants have prepared a schedule listing the dates, times, and locations

12              of planned sweeps and published same to any agencies, organizations, facilities, and

13              individuals known to be serving the homeless in or around Seattle, Washington, and in

14              accessible locations in and around Seattle, and in a prominent place on the city's website;

15              b. Prior to any specific sweep, the defendants (or their agents) have, in addition to

16              giving any other notices or information required by the MDAR 08-01 or other law, within

17              a reasonable time before the sweep, investigated the encampment site and:

18                     i. Identified the individuals who will be affected by the sweep;

19                     ii. Arranged suitable shelter for each such individual (a "suitable shelter"

20                     is an indoor facility in the same community to which the individual has

21                     access  during his or her preferred sleeping hours, and which is safe, fit for

22                     human habitation, and free of unlawful discrimination);

23

24

COMPLAINT - "NICKELSVILLE" - 24

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

iii. Arranged suitable transportation for each such individual to reach the shelter facilities and to bring along any personal property the person cannot reasonably be expected to leave behind;

iv. Arranged suitable storage facilities for any personal property such individual may have and transportation for the property to reach the facility ( a "suitable storage facility" is facility of adequate size and with the requisite characteristics to safely store the property in question, and to which the person has reasonable access);

v. Contacted each such individual, in a manner appropriate to the person's communicative needs, and made each such person aware (i) that the shelter facility is available to him or her, and its location and other relevant characteristics; (ii) that the storage facility is available to him or her, and its location and other relevant characteristics; (iii) of the available transportation; and (iv) of the date, time, and place of the sweep planned for the encampment; and

vi. With respect to any person contacted in connection with a planned sweep who is known or suspected to have a disability that may prevent the person from taking advantage of available shelter, storage, or transportation, or that may be exacerbated by the sweep, the defendants arrange for any reasonable accommodations that may enable such person to access shelter, storage, or transportation, or that may ameliorate the effects of the sweep.

c. Defendants have established a practical method by which persons potentially affected by a sweep may learn about and present objections to the sweep or request

i.Justice Law, PC
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

postponements or other accommodations in connection with the sweep before it occurs, and have any disputes concerning such objections adjudicated by an impartial decision maker in an orderly proceeding reasonably tailored to the capacities and circumstances of homeless individuals;

d. The Defendants have established policies and procedures for recording the dates, times, and locations of all sweeps, and the names of the officers and agents participating in each sweep, and the roles, duties, authorities, and other responsibilities of each such participant, and ensured that such records are fully accessible and available to the public;

e. Defendants have adopted policies and practices calculated to reasonably assure that no property in which any person has a reasonable expectation of privacy will be searched, seized, or destroyed in the course of a homeless sweep without a warrant or other court order so authorizing;

f. Defendants have adopted policies and practices calculated to reasonably assure that no property will be taken in a homeless sweep without just compensation;

g. Defendants have adopted policies and practices calculated to reasonably assure that laws affecting the use of public property will not be selectively enforced in a way that discriminates against or disproportionately affects homeless persons;

h. Defendants have adopted policies and practices calculated to detect violations of homeless persons' rights during encampment sweeps and to reasonably assure that corrective or disciplinary action is taken against employees or other agents who commit such violations, including by (i) requiring all agents and employees participating in a sweep to wear clothing, badges, or other highly-visible insignia informing observers of

COMPLAINT - "NICKELSVILLE" - 26

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299

1  the agency, organization, department, or other entity to which the person belongs and (ii)

2  establishing a procedure by which persons injured during encampment sweeps may

3  submit complaints for investigation and review by an appropriate official;

4      8.2. Because the defendants are known to have been engaging in sweeps of homeless

5  encampments without these safeguards, the Court should impose an injunction forbidding any

6  further sweeps and lift the injunction only upon proof that the appropriate safeguards have been

7  adopted.

8      8.3. Plaintiffs further request:

9          a. Damages, in an amount to be proven at trial;

10          b. All costs and expenses arising from this action;

11          c. Attorney fees; and

12          d. Such further relief as the court finds necessary or appropriate in the

13  interests of justice.

14      8.4. Plaintiffs request that this case be tried to a jury.

15  RESPECTFULLY SUBMITTED this 21st day of July, 2009.

16

**i.Justice Law, PC**

17

18  By /s/ Robert J. Siegel
    Robert J. Siegel, WSBA #17321
19      Attorney for Plaintiffs

20  **Peggy Hermann**
**Attorney At Law**

21

22  By:/s/ Peggy Hermann
    Peggy Hermann
23      Attorney for Plaintiffs

24

COMPLAINT - "NICKELSVILLE" - 27

**i.Justice Law, PC**
PO Box 25817
Seattle, WA 98165-1317
Phone/Fax: 888-839-3299