UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VETERANS FOR PEACE GREATER ) CASE NO. C09-1032 RSM
SEATTLE, CHAPTER 92, *et al.*, )
)
　　　　　Plaintiffs, ) ORDER DENYING PLAINTIFFS'
) MOTION FOR TEMPORARY
　　v. ) RESTRAINING ORDER AND
) PRELIMINARY INJUNCTION
CITY OF SEATTLE, *et al.*, )
)
　　　　　Defendants. )
)

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Dkt. #4). Plaintiffs, a group of homeless individuals currently occupying an encampment in the City of Seattle, seek to prevent Defendants from sweeping the encampment. For the reasons set forth below, the Court finds that Plaintiffs fall short of meeting the high legal standards necessary for injunctive relief, and therefore DENIES Plaintiffs' motion.

## II. DISCUSSION

**A. Background**

Plaintiffs are a group of approximately 70 homeless individuals occupying an encampment at the 7100-7200 block of West Marginal Way SW in Seattle, Washington. The

ORDER
PAGE - 1

northern portion of this lot is owned by the City of Seattle, while the southern portion is owned by the Washington State Department of Transportation ("WSDOT"). (*See* Dkt. #4, Ex. C). The encampment at-issue in this lawsuit, also known as "Nickelsville," is situated on the area that is administered by the WSDOT.

Plaintiffs originally established "Nickelsville" on or around September 22, 2008, on the portion of the lot owned by the City of Seattle. "Nickelsville" is a project of the nonprofit corporation Veterans for Peace Greater Seattle, Chapter 92, a named Plaintiff in this action. The participants of "Nickelsville" include both homeless and housed individuals, and its goal is to find suitable and permanent housing for homeless individuals of Seattle.

Three days after Plaintiffs arrived, the City conducted a sweep of "Nickelsville." Plaintiffs indicate that the City wrongfully arrested approximately 25 individuals for trespassing, and also seized and destroyed property belonging to the inhabitants. The individuals dispersed and relocated at several different sites around the City, primarily on private or church property.

Shortly after the sweep, WSDOT Secretary Paula Hammond, on behalf of Governor Christine Gregoire, notified Mayor Greg Nickels that "as the owner of the land parcel adjacent to the current site of the homeless demonstration on City of Seattle property, [the State of Washington] *expressly denies permission* . . . for City of Seattle employees or law enforcement to cross, arrest, or remove any citizens from State property." (Dkt. #4, Ex. D) (emphasis in original). Ms. Hammond further advised Mayor Nickels to "encourage all parties to immediately engage in meaningful discussions with groups who, like the Governor, care passionately about homelessness in our State." (*Id.*).

Plaintiffs indicate that as a result of what they believed was good will from the State, they moved back on the portion of the lot owned by the WSDOT on June 6, 2009. However, the WSDOT issued a notice of unauthorized use and trespass on June 9, 2009. Since that time, it appears that the WSDOT and Plaintiffs have attempted to reach a suitable solution, but no such resolution has been reached. Consequently, on July 20, 2009, the WSDOT

notified Plaintiffs that they must vacate the property by 7 p.m. on Thursday, July 23, 2009.

Ms. Hammond, on behalf of the WSDOT, specifically informed Plaintiffs:

> As you know, by moving your encampment on to State of Washington property without authorization on June 6th, you have been trespassing and we provided you with notice of such on June 9th.
>
> In our discussions, we have agreed that WSDOT is a transportation agency, and is not prepared to host an encampment. The site is not suitable for long-term habitation, and staying here could jeopardize your health.
>
> The City of Seattle has notified us that the state is in violation of health and safety ordinances. As a result of the violation notice and the expiration of our agreed upon deadline to come to a decision, the encampment can no longer stay on DOT property.
>
> In addition, WSDOT does not have authority to make this site, which is public property, available to you, as that would be an inappropriate gift of public funds. Our attorneys have also advised that your presence on this property poses liability risks for WSDOT.
>
> \*\*\*
>
> A temporary move to a healthier and more appropriate location would serve you better than to remain where you are, which is not acceptable or safe. In addition, you will commit a criminal trespass if you remain on the property.
>
> You must therefore vacate this piece of property within the next 72 hours.

(Dkt. #4, Ex. F).

One day after receiving this notice, Plaintiffs filed the instant lawsuit in this Court. Plaintiffs simultaneously brought a motion for temporary restraining order ("TRO") and preliminary injunction enjoining the WSDOT from performing a sweep of their encampment. The Court issued a minute order on Thursday, July 23, 2009 denying Plaintiffs' motion in order to provide immediate notification to the parties implicated in this lawsuit. The Court's specific reasons for denying Plaintiffs' motion are set forth below.

**B. FRCP 65**

Pursuant to FRCP 65, "[t]he Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B)

ORDER
PAGE - 3

the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FRCP 65(b)(1)(A)-(B).

Here, and based on FRCP 65(b)(1)(B) alone, the Court has sufficient grounds to deny Plaintiffs' motion. Plaintiffs' counsel has failed to certify in writing why a TRO should issue without notice to Defendants. In fact, Plaintiffs' counsel has not even filed a declaration or affidavit in this regard. Nevertheless, Plaintiffs are not prejudiced by this failure, as the legal arguments raised by their motion fall significantly short of the issuance of either a TRO or a preliminary injunction.

In order to obtain injunctive relief, the party seeking the injunction must demonstrate that "he is *likely* to succeed on the merits [and] that he is *likely* to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008) (emphasis added). The Supreme Court recently imposed this new standard that clarifies the contours of the test previously employed by the Ninth Circuit. This test required a party seeking an injunction to show "probable" success on the merits and the "possibility" of irreparable harm. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Despite this change, the well-recognized "sliding scale" approach with respect to injunctive relief remains intact. *See Winter*, 129 S.Ct. at 393 (J. Ginsburg, dissenting) ("This Court has never rejected [the sliding scale] formulation, and I do not believe it does so today."). This approach requires courts to view success on the merits and irreparable harm as "two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Napster*, 239 F.3d at 1013 (internal citation and quotation omitted). In other words, the greater the relative hardship to the party seeking the injunction, the less the probability of success must be shown, and vice versa. *See Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

A plaintiff seeking a preliminary injunction must also show "that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374 (citations omitted). "Because a preliminary injunction is an extraordinary remedy, the

movant's right to relief must be clear and unequivocal." *Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008) (citation omitted).

### 1. Irreparable Injury

Plaintiffs claim that it is undeniable that a sweep of the encampment would inflict irreparable harm upon them. In support of this argument, Plaintiffs make general arguments about the potentially devastating effect of losing one's home, community, and belongings. The Court unequivocally agrees with these universal principles. "The specter of losing one's domicile, however primitive, is deeply troubling." *Davison v. City of Tuscon*, 924 F.Supp. 989, 992 (D.Ariz. 1996). Being forced to relocate is an injury in which monetary damages are not a sufficient substitution for the harm inflicted. *See Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 881-882 (9th Cir. 2008). Moreover, the emotional damages and stress associated with such a loss can be a significant injury.

Despite these principles, the irreparable nature of the harm potentially imposed on Plaintiffs in this specific case is not as substantial as Plaintiffs represent to the Court. The current encampment has only been in place since June 6, 2009. And as Plaintiffs themselves acknowledge, the population of "Nickelsville" ranges from between 50-100 residents out of an approximately 8,400 homeless residents in the City of Seattle. In other words, "Nickelsville" is far from a permanent establishment. Had this encampment been in place for a significant period of time with more established residents, the potential for irreparable injury would be greater.

Relatedly, the record establishes that Plaintiffs are not completely without solutions if they are forced to leave their current encampment. Ms. Hammond notified Plaintiffs:

> We remain willing to help. Social workers from the state have visited your encampment on several occasions to assist food banks, and offer help with employment placement and health care. More appropriate resources are available in the King County area for people who need assistance finding food, housing, medical services and employment.

(Dkt. #4, Ex. F).

ORDER
PAGE - 5

The record also establishes that Plaintiffs have "had offers from faith organizations to host [them] on a temporary basis and that [Plaintiffs] have declined these generous offers." (*Id*.). Plaintiffs do not dispute these contentions in any of their pleadings.

The Court also finds little merit in Plaintiffs' contention that "an alleged constitutional infringement will often alone constitute irreparable harm." (Dkt. #4 at 12) (citing *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)). While this principle is correct, the Court fails to see which constitutional rights are being infringed in this case. As explained in more detail below, the right to travel and the right to be free from the Eighth Amendment's ban on cruel and unusual punishment – the constitutional rights Plaintiffs allege are being infringed – do not directly apply in this case. Thus, Plaintiffs cannot clearly lay out a case of irreparable harm.

Therefore while the Court does not argue with Plaintiffs' general contentions about the irreparable harm one would face if their home was lost, Plaintiffs fail to establish why these general principles apply to the specific facts of this case.

**2. Success on the Merits**

Notwithstanding the relative strengths and weaknesses of Plaintiffs' arguments with respect to irreparable injury, an injunction cannot issue in this case because Plaintiffs fail to justify that they will succeed on the merits. Here, Plaintiffs contend they will succeed because they have a fundamental right to travel, and a right to be free from the Eight Amendment's ban on cruel and unusual punishment. Plaintiffs further argue that the City and the WSDOT do not have any compelling interests in sweeping their encampment. Each of these arguments lacks merit.

With respect to the right to travel, the Court recognizes that this is a fundamental constitutional right. *See Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254 (1974) ("The right of interstate travel has repeatedly been recognized as a basic constitutional freedom."). "Preventing homeless individuals from performing activities that are 'necessities of life,' such as sleeping, in any public place when they have nowhere else to go effectively penalizes migration." *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1580 (S.D.Fla. 1992).

Nevertheless, this right is not directly implicated when individuals simply seek to remain at a certain place. *See Davison*, 924 F.Supp. at 993. The right also "does not confer immunity against local trespass laws and does not create a right to remain without regard to the ownership of the property on which [an individual] chooses to live or stay, be it public or privately owned property." *Tobe v. City of Santa Ana*, 892 P.2d 11245, 1165 (1995). As a result, it is clear that the residents of "Nickelsville" cannot invoke the fundamental right to travel in justifying their desire to remain on WSDOT property without permission.

Even if the right to travel was implicated in this case, the government has a compelling interest in curbing this right. It is well-settled that any regulations or government action prohibiting or otherwise penalizing the right to travel "must promote a compelling governmental interest in order to survive constitutional scrutiny." *Roulette v. City of Seattle*, 850 F.Supp. 1442, 1447 (W.D.Wa. 1994) (citing *Shapiro v. Thompson*, 394 U.S. 618 (1969) and *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898 (1986)).

In the instant case, the Court finds that the WSDOT has several compelling interests in effectuating the sweep. First, cities have a substantial interest in protecting its public spaces. *See Pottinger*, 810 F.Supp. at 1581 (recognizing that a city has a legitimate interest in maintaining facilities in public areas). In fact, this district court has specifically held that the City of Seattle's interest in protecting public safety and promoting the economic health of its commercial areas is substantial. *See Roulette*, 850 F.Supp. at 1448. Plaintiffs acknowledge these interests, expressly stating that they "concede that some of Defendants' stated objective could potentially pass muster as 'compelling' governmental objectives, such as protecting public health and controlling violent crime." (Dkt. #4 at 22). These interests were also made clear to Plaintiffs when Ms. Hammond informed the residents of "Nickelsville" that the site is not suitable for long-term habitation, and could potentially jeopardize Plaintiffs' health and safety. (Dkt. #4, Ex. F).

Second, Ms. Hammond also informed Plaintiffs that the WSDOT "does not have the authority to make this site, which is public property, available to you, *as that would be an inappropriate gift of public funds* . . . [Y]our presence on this property poses *liability risks* for

WSDOT." (*Id.*) (emphasis added). The Court agrees with the WSDOT that these are legitimate interests. In particular, the potential liability WSDOT faces by permitting such an encampment to continue on its property is substantial. Plaintiffs themselves inform the Court that these risks are very real, as highlighted by the recent death of a homeless man sleeping on WSDOT property who was run over by a WSDOT brush-clearing machine. (Dkt. #4 at 2-3).

Next, the practical considerations in justifying a sweep are likewise compelling. "Nickelsville" is currently on WSDOT property, and WSDOT is a transportation agency of the State of Washington. The WSDOT is obviously unequipped to manage or otherwise maintain a homeless encampment on its property. Indeed, Plaintiffs repeatedly argue that it is the City's responsibility to provide adequate shelter for its homeless citizens, and simultaneously fail to show how the WSDOT is responsible for providing adequate housing. Under such circumstances, Plaintiffs' right to travel is significantly outweighed by the governmental interests at stake.

With respect to the Eighth Amendment's ban on cruel and unusual punishment, Plaintiffs cannot dispute that this constitutional right "was designed to protect those *convicted of crimes*." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (emphasis added) (citing *Ingraham v. Wright*, 430 U.S. 651, 664 (1977)). The clause applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham*, 430 U.S. at 671, n.40. Here, and although the WSDOT has notified Plaintiffs that they are potentially in violation of criminal trespass, no individual has been arrested under the trespass statute and no individual has begun the process of prosecution.

In addition, the opinion Plaintiffs rely heavily upon in arguing that the Eight Amendment should apply in this case has been vacated. *See Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006). Upon a request by the parties in that case to withdraw the opinion, the Ninth Circuit clearly stated that "we dismiss this appeal as moot [and] vacate our opinion in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006)[.]" *Jones v. City of Los Angeles*, 505 F.3d 1006 (9th Cir. 2007). Accordingly, the Eight Amendment's cruel and unusual punishments clause very clearly does not apply.

Overall, the Court is sensitive to the plight of the homeless and their need for shelter. The Court is likewise receptive to the majority of Plaintiffs' contentions that a permanent solution to the issue of homelessness in the City of Seattle is needed. The legal principle that nonetheless applies to this motion is that a temporary restraining order or a preliminary injunction is an "*extraordinary* equitable remedy, and one that should only issue when the movant's right to relief [is] *clear and unequivocal*." *Wilderness Workshop*, 531 F.3d at 1224 (emphasis added). The WSDOT has a legitimate interest in prohibiting homeless encampments on its property, and the attenuated constitutional rights Plaintiffs claim are being implicated by this action simply do not justify the issuance of Plaintiffs' requested relief. Furthermore, because Plaintiffs cannot show they will succeed on the merits, the Court finds no reason to discuss whether Plaintiffs can show "that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. #4) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 24th day of July, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE